# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEFFREY TOMBLIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 25-CV-082-MTS |
| | ) |
| INTERNATIONAL FLAVORS & | ) |
| FRAGRANCES, INC., | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court is Defendant International Flavors & Fragrances, Inc.'s Motion to Dismiss and Brief in Support. (Docket No. 16). After considering the parties' briefing and relevant caselaw, the Court hereby **GRANTS** Defendant International Flavors & Fragrances, Inc.'s Motion to Dismiss.

## Background and Procedural History

On January 23, 2025, Plaintiff Jeffrey Tomblin ("Plaintiff") commenced this action in Mayes County District Court. (Docket No. 2-1). Defendant International Flavors & Fragrances, Inc. ("Defendant") removed the case to the Northern District of Oklahoma on February 20, 2025. (Docket No. 2). In the Complaint,[1] Plaintiff alleges a tort claim against Defendant for wrongful discharge in violation of Oklahoma public policy pursuant to *Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla. 1989) ("*Burk* tort").

On January 1, 2022, Plaintiff began his employment with Defendant at its Nutrition and Biosciences division located in Pryor, Oklahoma, as an at-will employee in the position of

---

[1] The Court refers to the Petition filed in state court as the Complaint herein.

Environmental Health & Safety Leader.  (Docket No. 2-1 at 3).  In the Complaint, he identifies three incidents that occurred during his employment that allegedly led to his wrongful discharge in violation of Oklahoma public policy.  (Docket Nos. 2-1; 19 at 1-5).

Plaintiff contends the first incident occurred in April 2023 when he evaluated "whether and how fall arrest equipment might be attached to certain new turret trucks."  (Docket No. 2-1 at 4). Based upon his review, Plaintiff determined it was unnecessary to add fall arrest equipment to the turret trucks as the existing guard railing met the federal fall-prevention safety requirements of the Occupational Safety and Health Act ("OSHA").  *Id.*  Defendant's managers disagreed with Plaintiff's conclusion. *Id.* at 4-5.  In response, Plaintiff claims he notified Defendant's Director of Environment, Health, Safety, and Sustainability ("Director") and other senior leaders of his concerns, and they decided to follow Plaintiff's recommendation regarding the turret trucks.  *Id.* at 5-6.

Plaintiff asserts the second incident occurred in July 2023 when he was notified that one of Defendant's employees working the night shift was injured "by a razor blade that had been intentionally taped to the handrail in a workplace stairwell."  *Id.* at 6.  Plaintiff alleges that the plant manager misrepresented the incident to Defendant's employees and disagreed with Plaintiff's recommendation "to report [the] criminal act of workplace violence" to law enforcement.  *Id.* at 6-7.  According to the Complaint, Plaintiff then notified the Director of the razor-blade incident, the plant manager's cover up, and the refusal to report the incident to law enforcement.  Plaintiff maintains Defendant's senior leaders agreed with him, criticized the plant manager's actions, and planned to notify law enforcement.  *Id.* at 7.

Plaintiff claims the third incident occurred in the fall of 2023 when he began a safety-related project to determine "whether double-hearing protection might safely be reduced to single-

hearing protection" for employees performing production floor activities. *Id.* According to Plaintiff, he advised the plant manager that "the double-hearing protection, in certain work contexts, was a safety hazard and increased the chance of a workplace accident or injury." *Id.* at 8. Plaintiff ultimately had to notify upper-level process leaders of his findings, which allegedly caused the plant manager to become "very angry" and complain that Plaintiff "was always going over his head" and "always had to have things his own way." *Id.*

Plaintiff contends that the plant manager, "animated by a retaliatory attitude" associated with their past dealings, assigned him a "poor" rating on his end-of-year performance review for 2023, issued him a Performance Improvement Plan ("PIP") in January 2024, and accused him of violating Defendant's Confined Space Policy in February 2024. *Id.* at 8-9. Although Defendant's stated reason for Plaintiff's termination was violation of the safety policy, Plaintiff believes his termination on March 4, 2024, "was the direct result of his conduct taken in support of protecting [] employee safety and opposing unsafe work practices" and "of his acting in a manner consistent with the public policy of the State of Oklahoma." *Id.* at 10.

In support of his *Burk* tort claim for wrongful discharge in violation of Oklahoma public policy, Plaintiff identifies three public policies in the Complaint and their bases in statutory and/or decisional law: (1) the public policy requiring "employers to provide a reasonably safe workplace for its employees" pursuant to *McMillian v. Barton-Robison Convoy Co.*, 78 P.2d 789 (Okla. 1938) and *Wallace v. Kentucky Fried Chicken of Lawton*, 526 P.2d 504 (Okla. 1974); (2) the public policy requiring "employers to furnish employees with a place of employment which is free from recognized hazards that are causing or are likely to cause death or serious physical harm" pursuant to the Oklahoma Occupational Health and Safety Standards Act, Okla. Stat. tit. 40, §§ 401-35; and (3) the public policy encouraging the disclosure of criminal activity to protect public safety

pursuant to *Lachman v. Sperry-Sun Well Surveying Co.*, 457 F.2d 850 (10th Cir. 1972). *Id.* at 9-10.

On March 20, 2025, Defendant filed its Motion to Dismiss and Brief in Support. (Docket No. 16). Plaintiff filed his Response in Opposition on April 10, 2025 (Docket No. 19), and Defendant filed its Reply on April 24, 2025. (Docket No. 20). On May 7, 2025, Defendant filed a Notice of Supplemental Authority (Docket No. 21), to which Plaintiff responded on May 15, 2025. (Docket No. 23). As such, the instant motion is ripe for decision.

## Legal Standard

Defendant seeks dismissal of Plaintiff's *Burk* tort claim for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court set forth the plausibility standard applicable to a motion to dismiss filed under Rule 12(b)(6). *Bell Atlantic* stands for the summarized proposition that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678, quoting *Bell Atl.*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, citing *Bell Atl.*, 550 U.S. at 556; *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (interpreting the plausibility standard as referring "to the scope of the allegations in the complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible.") (quotation omitted). However, a court need not accept as true allegations that are conclusory in nature. *Id.* at 678 ("[T]he tenet that a court must accept as true all the allegations contained in a complaint is

4

inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."), citing *Bell Atl.*, 550 U.S. at 555.

### Discussion

In *Darrow v. Integris Health, Inc.*, 176 P.3d 1204 (Okla. 2008), the Oklahoma Supreme Court explained the modification of the common law at-will employment doctrine by *Burk*:

> Oklahoma law adheres to the so-called American employment-at-will doctrine. Employers are free to discharge at-will employees in good or bad faith, with or without cause. At-will employees do not have a cognizable cause of action for wrongful discharge unless the claim falls within the narrow class of complaints in which the discharge may be characterized as contrary to a clear mandate of public policy and violates some law articulated in state constitutional, statutory or decisional sources. This exception was introduced into Oklahoma's legal system by *Burk's* singular modification of the common-law employment-at-will doctrine. The exception's application should be tightly circumscribed. Circumstances in which this actionable "*Burk* tort" is said to arise are where an employee is discharged for (1) refusing to violate an established and well-defined public policy or (2) performing some act consistent with a clear and compelling public policy.

*Darrow*, 176 P.3d at 1210, citing *Burk*, 770 P.2d at 28-29. Thus, *Burk's* public-policy exception is not easily applied due to the difficulty of identifying an established public policy. *Id.* The determination of whether an established public policy exists is a question of law for a court.[2] *Id.*

As previously set forth herein, Plaintiff identified three public policies which he contends are established in the State of Oklahoma and support his *Burk* tort claim. (Docket Nos. 2-1 at 9-11; 19 at 4-5). As an alternative to dismissal, Plaintiff seeks certification to the Oklahoma Supreme

---

[2] To establish a *Burk* tort claim, a plaintiff must show: "(1) an actual or constructive discharge (2) of an at-will employee (3) in significant part for a reason that violates an Oklahoma public policy goal (4) that is found in Oklahoma's constitutional, statutory, or decisional law or in a federal constitutional provision that prescribes a norm of conduct for Oklahoma and (5) no statutory remedy exists that is adequate to protect the Oklahoma policy goal." *Vasek v. Bd. of Cty. Comm'rs of Noble Cty.*, 186 P.3d 928, 932 (Okla. 2008); *see also Poff v. Okla. ex rel. Okla. Dep't of Mental Health & Substance Abuse Servs.,* 683 F. App'x 691, 695 (10th Cir. 2017) (quoting *Vasek* for elements of *Burk* tort claim). Based upon Defendant's Motion to Dismiss, the Court focuses its decision on elements (3) and (4).

Court of the public policy issues. (Docket No. 19 at 14-15). Defendant argues that Plaintiff's Complaint is subject to dismissal under Rule 12(b)(6) because the sources of law relied upon by Plaintiff are not "established public policy" that support a *Burk* tort claim. (Docket No. 16 at 3-4). It contends certification is unnecessary. (Docket No. 20 at 5). The Court addresses the sources of public policy identified by Plaintiff in the Complaint and his alternative request for certification below.

### A.    The General Duty to Provide a Reasonably Safe Workplace

Plaintiff relies upon the Oklahoma cases of *McMillian* and *Wallace* to support his argument that Oklahoma has a clearly established public policy requiring an employer to provide a safe workplace for employees. (Docket Nos. 2-1 at 9-10; 19 at 7-9), citing *McMillian*, 78 P.2d at 790 ("It is elementary that a master must furnish his employees a reasonably safe place in which to work.") and *Wallace*, 526 P.2d at 506 ("To his servant a master owes nondelegable duties to furnish (1) a reasonably safe place to work; (2) reasonably safe materials and equipment with which to work; and (3) reasonably safe methods by which to work.") (citation omitted). Both *McMillian* and *Wallace* address negligence claims against employers based upon the general duty of care to provide "a reasonably safe place to work." *McMillian*, 78 P.2d at 789-90; *Wallace*, 526 P.2d at 506.

However, Plaintiff acknowledges that no state or federal Oklahoma court has applied Oklahoma law and specifically found that the general workplace safety policy statements of *McMillian* and *Wallace* articulate a clearly established public policy that rises to the level necessary to support a *Burk* tort claim. (Docket No. 19 at 8-9). Instead, Plaintiff argues that no Oklahoma case specifically rejects his argument and that the cases "plainly state a norm of conduct for

6

Oklahoma employers – they are duty-bound to provide a reasonably safe workplace for their employees" and such "recognition" supports a *Burk* tort claim. *Id.*

The Court has reviewed *McMillian* and *Wallace* and conducted its own research. Other than the Northern District of Oklahoma case of *Wilson v. Yuba Heat Transfer, LLC*, No. 11-CV-0080-CVE-TLW, 2011 WL 3241385 (N.D. Okla. July 28, 2011), a case cited by both parties, the Court could not locate any Oklahoma case law specifically discussing *McMillian* or *Wallace* in the context of a *Burk* tort. This Court finds *Wilson* instructive, particularly its acknowledgement of an "Oklahoma employer's . . . duty to provide their employees with a 'reasonably safe workplace[,]'" while also pointing out the Oklahoma courts' lack of clarity as to "whether that duty of care may constitute a well-established public policy for purposes of a *Burk* claim." 2011 WL 3241385, at *5. Accordingly, this Court, in accordance with *Wilson*, declines to recognize a *Burk* tort claim in this case. *Id.* ("[W]ithout a clearer indication from Oklahoma courts that such an argument is viable, the Court will not recognize a *Burk* tort claim based on a private employer's duty of care toward its employees.").

**B.    The Oklahoma Occupational Health and Safety Standards Act**

Plaintiff also asserts that the Oklahoma Occupational Health and Safety Standards Act, Okla. Stat. tit. 40, §§ 401-35 ("OOHSSA"), establishes a public policy for Oklahoma employers to provide employees "with a place of employment which is free from recognized hazards that are causing or are likely to cause death or serious physical harm." (Docket No. 2-1), citing Okla. Stat. tit. 40, § 403. He specifically relies upon the following portion of OOHSSA as the established public policy supporting his *Burk* tort claim:

> Occupational accidents produce economic and social loss, impair productivity and retard the advancement of standards of living. Both humane and economic considerations recommend the establishment and implementation of effective injury control measures. A unified, continuing, professional effort is required. A

dynamic program of health and safety education and training is the best-known solution to the control of occupational accidents.

*Id.*, quoting Okla. Stat. tit. 40, § 413.

Defendant, a private employer, argues in its Motion that the Oklahoma Supreme Court has explicitly held that OOHSSA cannot provide the basis for a *Burk* tort claim against a private employer.[3]  (Docket No. 16 at 7-9).  In *Griffin v. Mullinix*, 947 P.2d 177 (Okla. 1997), the Oklahoma Supreme Court considered a certified question from the United States District Court for the Western District of Oklahoma, which asked "[w]hether the 'general duty clause' of [OSHA] and/or [OOHSSA], either in conjunction or separately, articulate a 'clear mandate' of public policy of the State of Oklahoma upon which a plaintiff may base a tort claim against a private employer for wrongful termination of employment alleging retaliation for protesting or attempting to alter working conditions that the plaintiff believed to be unsafe." *Id.* at 177.  Regarding OOHSSA, the court relied upon amendments to the Act in 1984, wherein the Oklahoma legislature removed private employers from the definition of an employer. *Id.* at 179.  It noted that although the public policy language contained in § 413 did not change, "the legislature's decision to limit application of the Act to public employers limited the entire [OOHSSA], including the public policy statement." *Id.*  The court therefore answered the certified question in the negative, finding that "because no Oklahoma articulation of public policy exists with regard to the private employer under the [OOHSSA,]" a "[p]laintiff may not base a private tort claim against his private employer

---

[3] Defendant also argues Plaintiff's *Burk* tort claim is premised upon the federal OSHA statute. Although Plaintiff makes a brief reference to "violation of applicable federal OSHA regulations" in the Complaint, it is clear from the later referenced public policy bases in the Complaint and his Response to Defendant's Motion that he is not alleging the federal statute as a public policy supporting his wrongful discharge claim.  (Docket Nos. 2-1 at 6; 19 at 9 n.5).  Thus, the Court will not address the federal OSHA statute.

premised upon either the federal OSHA statute, [OOHSSA,] or the two in conjunction with one another." *Id.* at 180.

Although Plaintiff concedes that *Griffin* "precludes his *Burk* tort claim based on [OOHSSA]" and that it has not expressly been overruled, he contends "*Griffin* is not good law because it was implicitly overruled by the Oklahoma Supreme Court's holding in *Smith v. Pioneer Masonry, Inc.*, 226 P.3d 687 (Okla. 2009)." (Docket No. 19 at 9-10). In *Smith*, the Oklahoma Supreme Court considered a *Burk* tort premised upon racial discrimination in the workplace, wherein "[t]he trial court ruled that the public policy embodied in the Oklahoma Anti-Discrimination Act ["OADA"] d[id] not apply to employers, like Pioneer, that have less than fifteen employees." *Smith*, 226 P.3d at 688. The Oklahoma Supreme Court acknowledged its prior decision in *Brown v. Ford*, 905 P.2d 223 (Okla. 1995), wherein it denied public policy protection under the OADA because *Brown* involved an employer with fewer than fifteen employees. *Id.* Relying on the OADA's primary purpose "to prohibit racial discrimination in employment" and that such "purpose constitutes a general declaration of public policy on th[e] subject[,]" the Oklahoma Supreme Court concluded that "the [OADA] provides statutory remedies in cases where employers have more than fifteen employees, while the common law provides a *Burk* tort to all victims of racial discrimination regardless of the number of employees." *Id.* at 689. Thus, it overruled *Brown* "to the extent it h[e]ld[] the public policy embodied in the [OADA] can only serve as the basis for a *Burk* tort pursued by an employee whose employer meets the fifteen employee threshold." *Id.*

This Court declines to find that *Smith* implicitly overruled *Griffin* for two reasons. First, *Smith* involved an OADA discrimination claim, not a *Burk* tort based upon workplace safety policies under OOHSSA. *See Wilson*, 2011 WL 3241385, at *3 (addressing *Griffin* and *Smith* and

noting that "[t]he policy considerations underlying the discrimination claims at issue in [*Smith*] are very different than those regarding the reporting of unsafe working conditions, and, in the absence of an indication from the Oklahoma Supreme Court that it intended to overrule *Griffin* in line with its reasoning in [*Smith*], the Court will not predict such an extension"). Second, since the Oklahoma Supreme Court's ruling in *Smith*, courts have continued to rely on *Griffin* when determining that no articulation of Oklahoma public policy exists as to a private employer under OOHSSA. *See Ho v. Tulsa Spine & Specialty Hosp., L.L.C.*, 507 P.3d 673, 676 n.4 (Okla. 2021) (stating the holding in *Griffin* as to OOHSSA and that it "has not been expressly overruled"); *Matthews v. LaBarge, Inc.*, 407 F. App'x 277, 283 (10th Cir. 2011) (applying *Griffin* to preclude *Burk* tort against private employer based upon OOHSSA).[4]

Accordingly, as Defendant is a private employer, Plaintiff cannot rely upon a violation of OOHSSA to establish a public policy supporting his *Burk* tort claim.

### C.    Criminal Statutes

Defendant argues that the criminal law Plaintiff attempts to rely upon does not provide the necessary public policy required to establish a *Burk* tort. (Docket No. 16 at 9). Plaintiff responds, citing *Darrow*, that his *Burk* tort claim may be premised on Oklahoma's public policy of

---

[4] Plaintiff also makes a brief argument that *Darrow* supports his conclusion regarding *Griffin*. (Docket No. 19 at 12). As discussed below, *Darrow* involved potential criminal activity (fraud) and that such activity formed the basis of a *Burk* tort because it affected the general public. 176 P.3d at 1215. As part of its analysis, *Darrow* referenced the protection of state employees under Oklahoma statute from retaliatory discharge for whistleblowing activity. *Id.* at 1215-16. It concluded that private employees reporting potential fraud should be afforded similar protections under *Burk*. *Id.* Thus, like *Smith*, *Darrow* did not address *Griffin* in the context of a *Burk* tort based upon workplace safety policies in violation of OOHSSA.

encouraging employees to report crimes which create unsafe workplace environments.[5]  (Docket No. 19 at 13), citing 176 P.3d 1204.

The Oklahoma Supreme Court has explicitly "held that reporting criminal activity is not infused with the necessary clear and compelling public policy sufficient to protect the employee from discharge under the tort established in *Burk*."  *Booth v. Home Depot, U.S.A., Inc.*, 504 P.3d 1153, 1156 (Okla. 2022), citing *Hayes v. Eateries, Inc.*, 905 P.2d 778, 787 (Okla. 1995).  However, the Oklahoma Supreme Court has found a narrow set of circumstances in which the public policy of encouraging reporting of crime is sufficient to support a *Burk* tort.  For instance, in *Darrow*, the plaintiff-employee reported fraud, which was being committed on the Medicare system, to his former employer.  176 P.3d at 1207-08.  The plaintiff was then terminated five days later.  *Id.* Because the Medicare system is "a financial system supported with general public tax dollars and potentially benefit[s] the public as a whole[,]" *Booth*, 504 P.3d at 1156, the *Darrow* court found the reporting of fraud on such a system to constitute a clear and compelling public policy because such actions further the wider public good.  *Darrow*, 176 P.3d at 1216.  Despite its holding, the court cautioned "that today's pronouncement is not to be understood so broadly as to warrant a conclusion that any employee allegation of illegal or unsafe employer's activity will withstand scrutiny in light of *Burk*."  *Id.*

---

[5] Plaintiff also references *Lachman* in his Complaint to establish an Oklahoma public policy which encourages employees to report crimes.  (Docket No. 2-1 at 10), citing 457 P.2d at 853.  In *Lachman*, the Tenth Circuit stated that "[i]t is public policy in Oklahoma and everywhere to encourage the disclosure of criminal activity . . . ."  457 P.2d at 853.  However, *Lachman* is distinguishable from the instant case, as that case did not involve a *Burk* tort.  Rather, the *Lachman* plaintiff sought damages for breach of contract related to an unauthorized disclosure of a directional survey of an oil and gas well.  *Id.* at 851.  Further, the Tenth Circuit affirmed the lower court's dismissal of plaintiff's complaint for failure to state a claim.  *Id.* at 854.

Conversely, in *Hayes*, the plaintiff-employee alleged he was wrongfully discharged following his reporting and attempted investigation of a coworker's theft of property and embezzlement on the employer. 905 P.2d at 781. The Oklahoma Supreme Court held that, "[a]lthough . . . the reporting of crimes to appropriate law enforcement officials should be lauded and encouraged," the reporting of the particular crime of embezzlement and theft against a private employer was not "so imbued with a clear and compelling public policy such that a tort claim is stated . . . ." *Id.* at 786. The court explained that the situation before it was distinguishable from one in which an employee "s[ought] to vindicate his own legal rights or interests" or whistleblowing to protect the public health, safety, or general welfare. *Id.* Rather, the facts involved the private interests of the employer-employee relationship and the reporting of crime by someone other than the direct victim. *Id.* at 787.

Plaintiff's alleged facts are similar to those in *Hayes* and do not trigger the application of the narrow exception articulated by the Oklahoma Supreme Court in *Darrow*. Plaintiff has not alleged a public policy "that protects the public from harm to their health, safety, and welfare[,]" *Booth*, 504 P.3d at 1157, but rather that he, an employee of a private employer, advised his supervisor to report an alleged assault and battery which occurred on another individual. (Docket No. 2-1 at 7). The taping of a razor blade to a handrail in a workplace stairwell, albeit extremely concerning, is not the type of crime impacting the general public. *See Darrow*, 176 P.3d at 1216 (The exception outlined in *Darrow* was "not to be understood so broadly as to warrant a conclusion that any employee allegation of illegal or unsafe employer's activity will withstand scrutiny in light of *Burk*."). Therefore, the Court finds Plaintiff fails to establish a clear and compelling public policy necessary to allege a *Burk* tort.

### D.     Certification to the Oklahoma Supreme Court

Plaintiff also requests that, should the Court find his alleged public policy bases present novel and unsettled legal issues, it certify three questions to the Oklahoma Supreme Court. (Docket No. 19 at 14-15).  Plaintiff's proposed questions focus primarily on OOHSSA and whether it provides a clear mandate of public policy upon which a plaintiff may base a *Burk* tort claim.  *Id.* Defendant argues that certification is unnecessary, as there is already established and controlling law regarding Plaintiff's claims.  (Docket No. 20 at 5).

Pursuant to Okla. Stat. tit. 20, § 1602, "[t]he Supreme Court . . . may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling decision of the Supreme Court or Court of Criminal Appeals, constitutional provision, or statute of this state."  Stated differently, "[c]ertification is appropriate if 'the question before [the court] (1) may be determinative of the case at hand and (2) is sufficiently novel that [the court would] feel uncomfortable attempting to decide it without further guidance.'"  *Nat'l Union Fire Ins. Co. of Pittsburgh v. Dish Network, LLC*, 17 F.4th 22, 35 (10th Cir. 2021), quoting *Morgan v. Baker Hughes Inc.*, 947 F.3d 1251, 1258 (10th Cir. 2020).  "If a 'reasonably clear and principled course' is available," the court will not certify a question to the state supreme court.  *Morgan*, 947 F.3d at 1258, quoting *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007) ("Under [Tenth Circuit] jurisprudence, we will not certify every 'arguably unsettled question of state law [that] comes across our desks.'").

Although the proposed questions may be determinative of the case, as Defendant concedes, the issues presented here are not sufficiently novel to warrant certifying questions for the Oklahoma Supreme Court for the reasons explained above.  The Oklahoma Supreme Court has

13

provided clear guidance on how to address the issues before this Court. Thus, the Court denies Plaintiff's request to certify questions for the Oklahoma Supreme Court.

<u>**Conclusion**</u>

For the reasons discussed herein, Defendant International Flavors & Fragrances, Inc.'s Motion to Dismiss and Brief in Support (Docket No. 16) is hereby **GRANTED**.

**IT IS SO ORDERED** this 5th day of August, 2025.

MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT